**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LISA BRASSELL,

      Plaintiff,

v.                                                                                    Civ. No. 22-802 KK/SCY

CITY OF SANTA ROSA, *et al.*,

      Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

      In this civil action, Plaintiff Lisa Brassell claims that Defendants the City of Santa Rosa and Jose Campos, III violated her procedural due process rights, and that the City breached her employment contract, in terminating her from her position as City Administrator. (Doc. 1-2.) Now before the Court is Defendants' Motion to Dismiss and for Qualified Immunity (Doc. 15), filed December 20, 2022. Plaintiff responded in opposition to the Motion on December 31, 2022, and Defendants replied in support of it on January 13, 2023. (Docs. 19, 21). Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, the Court finds that Plaintiff has failed to state a breach of contract claim based on the City's alleged failure to give her an opportunity to cure her performance, but that her remaining breach of contract claims and her procedural due process claims survive Defendants' Motion.

**I.    LEGAL STANDARDS**

      Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The required statement must "give

the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2003) (quoting *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), courts must determine whether the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In undertaking this analysis, courts consider "the complaint as a whole, along with the documents incorporated by reference into the complaint[,]" and construe all well-pled allegations "in the light most favorable to the plaintiff." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015) (citations omitted). "Well-pled" means that allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Indeed, courts "disregard conclusory statements and look only to whether the remaining[] factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015) (quotation omitted).

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, [courts] will also review this defense on a motion to dismiss." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citation omitted). When a defendant raises the defense of qualified immunity on a motion to dismiss, courts employ a two-part test to determine whether it applies. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Under this test, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff

pleads facts showing (1) that the official violated a [federal] statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Courts "have discretion to 'decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Brown*, 662 F.3d at 1164 (brackets omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

If matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss under Rule 12(b)(6) must ordinarily be converted to one for summary judgment. Fed. R. Civ. P. 12(d). Under Rule 12(d), courts have broad discretion regarding whether to accept material beyond the pleadings or to resolve the motion solely on the pleading itself. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). No conversion is necessary, however, when a court considers information that is subject to judicial notice, documents attached to or incorporated by reference into the complaint, or documents referred to in the complaint and central to the plaintiff's claims, where their authenticity is not disputed. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

## II.    FACTUAL BACKGROUND

For the purpose of deciding Defendants' Motion, the Court assumes the truth of the following facts, which are taken from Plaintiff's First Amended Complaint for Breach of Contract and Violations of Due Process (Doc. 1-2) ("Amended Complaint") and from attached, incorporated, or judicially noticed documents.

On September 30, 2020, Plaintiff entered into a written Employment Contract ("Contract") with the City to serve as its "City Administrator."[1] (Doc. 1-2 at 10-13.) In this position, Plaintiff was to "serve as Chief Administrative Officer of the City" and "perform all duties as provided in Sections 3-14-13 through 3-14-15, NMSA 1978."[2] (*Id*. at 10.) The Contract provided that the City could terminate Plaintiff "for just cause, as defined by City personnel ordinance," but that otherwise her appointment would terminate on March 10, 2022. (*Id.* at 11.)

The Contract specified that Plaintiff was to be "employed as an appointed employee pursuant to relevant City [O]rdinances [N]os. 330 and 286" and that she "agree[d] to be bound by the provisions of any subsequent ordinance amending or replacing [O]rdinance[s] [N]os. 330 and 286." (*Id*.) On January 26, 2021, Ordinances Nos. 286 and 330 were "replace[d] and supersed[d]" by Ordinance No. 444.[3] (Doc. 15-1 at 2.) Ordinance No. 444 ("Ordinance") specifically addresses the City Administrator's employment status three times. First, Section 2.7 defines the term "[a]ppointed [e]mployee" as "unclassified, terminable-at-will employees … includ[ing] the City administrator … subject to terms of contract, if any." (*Id.*) Second, Section 2.10 provides that, "[e]xcept as provided in any employment contract," the position of City Administrator is "an

---

[1] The Court may consider the Contract without converting Defendants' Motion into one for summary judgment because: (1) Plaintiff refers to it in her Amended Complaint and attaches it as an exhibit; (2) it is central to Plaintiff's claims; and, (3) the parties do not dispute its authenticity. *See Tellabs, Inc.*, 551 U.S. at 322; *Smith*, 561 F.3d at 1098; *Pace*, 519 F.3d at 1072.

[2] Sections 3-14-13 to 3-14-15 are New Mexico state statutes specifying the term, qualifications, salary, duties, and authority of a municipal "manager," which Section 3-14-13 describes as the municipality's "chief administrative officer." N.M. Stat. Ann. §§ 3-14-13 to 3-14-15.

[3] Although Ordinance No. 444 was not attached to or expressly referenced in Plaintiff's Amended Complaint, the Court may nevertheless refer to it without converting Defendants' Motion into one for summary judgment because, as a municipal ordinance, it is subject to judicial notice. *Tellabs, Inc.*, 551 U.S. at 322; *see* Fed. R. Evid. 201(b) (courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Zimomra v. Alamo Rent-A-Car, Inc*., 111 F.3d 1495, 1503–04 (10th Cir. 1997) (concluding that a federal court may take judicial notice of municipal ordinances).

appointed position that is subject to this ordinance[.]" (*Id.* at 3.) Third, Section 3.2 indicates that

the City Administrator is an "[a]ppointed" employee and that

> [a]ppointed employees are unclassified, are terminable-at-will unless subject to an employment contract and cannot avail themselves of the grievance procedures set forth herein but are entitled to all other benefits provided by the City in accordance with this ordinance and are otherwise subject to it.

(*Id.* at 5.)

More generally, Section 2.36 of the Ordinance indicates that "[a] terminable-at-will employee" includes "an appointed employee[,]" and explains that "[a] terminable-at-will employee serves at the discretion of the City" and "can be terminated without cause." (*Id.*) Section 2.22 defines "[j]ust [c]ause" as "[a]ny conduct, action or inaction arising from, or directly connected with the employee's work which is inconsistent with the employee's obligation to the City and reflects the employee's disregard of the City's interest." (*Id.* at 3.) According to Section 2.22,

> [j]ust cause includes, but is not limited to: abandonment of position[;] inefficiency; incompetence; theft; misconduct; negligence; insubordination; violation of City policy or procedure; unauthorized use of City funds, property, facilities, and materials; disruptive behavior; repeated tardiness and excessive absences; or unsatisfactory performance which continues to be inadequate after reasonable efforts have been made to correct the performance problems; or for conviction of a felony or misdemeanor involving moral turpitude[.]

(*Id.* at 3-4.)

Section 2.38 states that "[u]nclassified employees" include "those filling appointed … positions." (*Id.* at 5.) The Ordinance grants "classified employees" specified rights to progressive discipline, formal grievance procedures, and pre-disciplinary and post-disciplinary hearings. (*Id.* at 6-10.) However, it grants none of those rights to unclassified employees. (*See generally id.*) Section 7.2 addresses "[p]rogressive [d]iscipline," and also sets forth a lengthy list of "[c]auses for

dismissal without progressive discipline," including "conduct deemed not to be in the best interest of the City and its employees."[4] (*Id*. at 7-8.)

Plaintiff's term as City Administrator began on September 30, 2020. (Doc. 1-2 at 2, 13.) On May 12, 2021—well before the March 2022 default termination date in the Contract—the City Attorney notified her that she was suspended with pay. (*Id*. at 2, 11.) Neither the City Attorney nor any other City employee told Plaintiff the reason for the suspension at that time. (*Id*. at 2.) About two days later, authorized agents of the City confronted Plaintiff and demanded that she resign, giving her a prepared letter of resignation to sign. (*Id*.) She refused to sign the letter, however, and asked to be informed of the basis for the demand. (*Id*.) The City's agents refused to tell her. (*Id*. at 3.) Instead, they confiscated her City property, including a cell phone and keys, and escorted her to her office, where she was told to gather her personnel effects. (*Id*.) Plaintiff was then escorted out of the building and banned from City offices and from contacting City employees. (*Id*.)

After this incident, the City hired an investigator "to retroactively justify its previously made decision to terminate the Plaintiff." (*Id*.) It ordered Plaintiff to meet with the investigator, threatening her with disciplinary action, including termination, if she failed to do so. (*Id*.) Plaintiff met with the investigator and answered the investigator's questions truthfully and to the best of her ability. (*Id*.) The investigator then issued a report, the "narrative part" of which was disseminated to the City Councilors "on or slightly before" June 11, 2021. (*Id*.) Plaintiff was not given access to the report or an opportunity to address the Mayor or City Council regarding the allegations in it before her termination. (*Id*. at 3-4.)

At all material times, Defendant Campos was a City Councilor. (*Id.* at 1-2, 5.) Sometime after May 12, 2021, but before June 11, 2021, Defendant Campos met with several City employees,

---

[4] The Ordinance clarifies that the listed causes are "examples" and "are not inclusive of all situations which may arise warranting dismissal without progressive discipline." (*Id*. at 8.)

who told him they would resign if Plaintiff was not terminated from her position as City Administrator. (*Id*. at 5.) "Considering that these employees would resign, the effect it would have on the operations of the City, and bowing to the pressure, [Defendant Campos] believed it would be in the best interest of the City to terminate Plaintiff." (*Id*.) "He arrived at this conclusion prior to receiving the investigator's report and prior to the City Council's meeting of June 11, 2021." (*Id*.)

On June 11, 2021, the City Council met in an executive session for about an hour to discuss Plaintiff's employment. (*Id*.) Plaintiff was not allowed to attend. (*Id*. at 4.) Though Defendant Campos spoke at the executive session, he does not remember what he said. (*Id*. at 5.) Indeed, "[n]ot a single City [C]ouncilor can recall any discussion taking place at executive session regarding Plaintiff's employment but all agreed that there was discussion." (*Id*.) "Because [Defendant Campos] had already made his decision to terminate Plaintiff prior to executive session, he was not impartial and is believed to have infected the decision[-]making process thereby denying Plaintiff a fair and impartial" hearing. (*Id*.) At the executive session, the City Council voted to terminate Plaintiff's employment, with Defendant Campos voting in favor of the termination. (*Id*. at 4-5.)

The City sent a letter purporting to give Plaintiff thirty days' notice of her termination, indicating that she would remain on administrative leave for the remainder of her employment.[5] (*Id*. at 4, 14.) The letter is dated June 11, 2021, and indicates that the City Council decided to terminate her employment on June 10, 2021. (*Id*. at 14.) It asserts that the City had just cause for the termination "as reflected in the attached investigation report." (*Id*.) However, the report was

---

[5] The Court may consider the letter without converting Defendants' Motion into one for summary judgment because (1) Plaintiff refers to it in her Amended Complaint and attaches it as an exhibit, (2) it is central to Plaintiff's claims, and (3) the parties do not dispute its authenticity. *See Tellabs, Inc.*, 551 U.S. at 322; *Smith*, 561 F.3d at 1098; *Pace*, 519 F.3d at 1072.

not sent with the letter. (*Id.* at 4.) The letter further states that Plaintiff could request the "voluminous" attachments to the report from the City Attorney. (*Id.* at 14.)

The City sent the letter via certified mail to "a post office address … which the City knew or should have known" Plaintiff was no longer using. (*Id.* at 4.) The City had Plaintiff's telephone number but did not call her to pick the letter up. (*Id.*) It also had her physical address but did not send the letter there. (*Id.*) The letter was returned to the City as unclaimed on July 1, 2021. (*Id.* at 15.) On July 2, 2021, the City hand-delivered the letter to Plaintiff at her physical address, along with her last paycheck. (*Id.* at 4, 15.) "After being terminated, Plaintiff did not receive a post termination hearing." (*Id.* at 4.)

## III.    DISCUSSION

Plaintiff's Amended Complaint contains two counts. In Count One, Plaintiff asserts state law contractual claims against the City. (*Id.* at 6.) In Count Two, she asserts Fourteenth Amendment due process claims against both Defendants pursuant to 42 U.S.C. § 1983. (*Id.* at 7.) The Court first considers Plaintiff's due process claims.

### A.  Plaintiff's Procedural Due Process Claims[6]

Plaintiff's due process claims are premised on the Fourteenth Amendment to the United States Constitution, which prohibits any state deprivation of life, liberty, or property without due process of law. (*Id.*); U.S. Const. amend. XIV, § 1. In support of these claims, Plaintiff alleges that she had a property interest in her continued employment with the City and that Defendants deprived her of that property interest without constitutionally adequate process. (Doc. 1-2 at 1, 7.) To evaluate procedural due process claims, courts in the Tenth Circuit employ a two-step inquiry: "(1) Did the individual possess a protected interest to which due process protection was applicable?

---

[6] In her response to Defendants' Motion, Plaintiff confirms that she is asserting only procedural due process claims against Defendants, (Doc. 19 at 2), and the Court limits its analysis accordingly.

(2) Was the individual afforded an appropriate level of process?" *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999) (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)). The Court addresses each step of this inquiry in turn.

> **i.** ***Plaintiff has plausibly alleged that she had a protected property interest in her continued employment as City Administrator.***

The Constitution does not create property interests in public employment. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Instead, such rights derive from independent sources such as federal, state, or municipal law, or express or implied contract. *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991). To allege a constitutionally protected property interest, Plaintiff must articulate how an independent source guaranteed her continued employment as City Administrator such that she had a "legitimate claim of entitlement to it" and not merely a "unilateral expectation of it." *See Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.,* 491 F.3d 1160, 1163 (10th Cir. 2007) (quotation omitted).

Defendants acknowledge that a public employee may have a property interest in continued employment but observe that legislative bodies "may elect not to confer" such an interest. (Doc. 15 at 9 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).) Noting that New Mexico law authorizes municipalities to enact ordinances governing "the hiring, promotion, discharge and general regulation of municipal employees," Defendants maintain that Ordinance No. 444 is such an ordinance and that it is critical to the evaluation of Plaintiff's procedural due process claims. (*Id*. at 9–10 (quoting N.M. Stat. Ann. § 3-13-4(A)).) Defendants further submit that, pursuant to the Ordinance, Plaintiff was an appointed, unclassified employee who was not entitled to a pre-termination or post-termination hearing, progressive discipline, or a formal grievance procedure. (*Id*. at 10.)

Defendants necessarily admit that Plaintiff's Contract included a just-cause-termination provision. (*Id*.) They contend, however, that this contract term "did not create the extent of property interest or due process that [Plaintiff] now claims." (*Id*.) In support, they argue that the Contract incorporated the Ordinance's broad definition of "just cause," which permitted termination without progressive discipline for "any conduct not in the best interest of the City." (*Id*. at 10–11 (citing Doc. 15-1 at 7–8).) In sum, Defendants contend that, taken together, the Contract and the Ordinance indicate that Plaintiff "had a very limited property interest, and was not entitled to the due process protections given to classified employees." (*Id*. at 10.)

Plaintiff, on the other hand, points out that she "was hired under an employment contract for a specific term" and "could only be fired for good cause." (Doc. 19 at 1.) Citing *Perry v. Sindermann*, 408 U.S. 593 (1972), she maintains that "[a]n employment contract is a property right when the employee can only be fired for cause." (*Id*. at 8.) Thus, according to Plaintiff, because she entered into an employment contract with a just-cause-termination provision, it follows that she possessed a constitutionally protected property right. (*Id*.)

As for the Ordinance, Plaintiff argues that the Contract "created the position of City Administrator outside of the Ordinance" and "incorporated only parts of it." (*Id*. at 1-4.) Conceding that "appointed officials are, by definition, 'at will,'" she submits that she cannot have been an appointed official because her employment contract included both a definite term and a just-cause-termination provision. (*Id*. at 1-4, 8.) Essentially, Plaintiff maintains that the Contract effectively trumps the provisions of the Ordinance designating her position as appointed and terminable-at-will. (*See id*.) And she further contends that because the Contract created a distinct "City Administrator" position, Section 3-14-13, which indicates that a municipal "manager" is appointed for an indefinite term, does not apply. (*See id*. at 1, 3.)

In *Perry v. Sindermann*, the United States Supreme Court explained that "[a] written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports [an employee's] claim of entitlement to continued employment unless sufficient 'cause' is shown." 408 U.S. at 601. Thus, in general, a written employment contract with a definite-tenure provision gives rise to a protected property interest in continued public employment. *See id.*; *see also, e.g., Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997) ("[P]ublic employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process[.]") (citations omitted); *Roth*, 408 U.S. at 576 ("[I]n the area of public employment, … college professors and staff members dismissed during the terms of their contracts … have interests in continued employment that are safeguarded by due process.") (internal citations omitted); *Bailey v. Kirk*, 777 F.2d 567, 574 (10th Cir. 1985) ("[A] public employee, who could not be suspended except for cause, had a property interest in continued employment[.]"); *Pray v. Caballero*, No. 03-cv-685, 2003 WL 27384725, at *9 (D.N.M. Dec. 2, 2003) ("[A]s a general proposition, public employees who may be disciplined, up to and including termination, only for just cause enjoy constitutionally protected employment interests."); *see also Gonzales v. City of Albuquerque*, 701 F.3d 1267, 1271 (10th Cir. 2012) ("Under New Mexico law, a public employee has a protected property interest … if he has an express or implied right to continued employment.").

Granted, here, the Ordinance and the state statutes referenced in the Contract render the property-interest analysis somewhat more complex. First, in the Contract, Plaintiff expressly agreed to be bound by the Ordinance.[7] (Doc. 1-2 at 11.) Thus, the Court must consider the

---

[7] The Court notes that, per the Contract, Plaintiff was to be "an appointed employee pursuant to … City [O]rdinances [N]os. 330 and 286"; however, also per the Contract, Plaintiff "agree[d] to be bound by the provisions of any subsequent ordinance … replacing [O]rdinance[s] [N]os. 330 and 286," *i.e.*, by Ordinance No. 444. (Doc. 1-2 at 11;

Ordinance's provisions addressing Plaintiff's employment status, which indicate that the City Administrator is, variously:  (a) an appointed, unclassified, terminable-at-will employee, "subject to terms of contract, if any," (Doc. 15-1 at 2); (b) "[e]xcept as provided in any employment contract," an "appointed position," (*id.* at 3); and, (c) an "[a]ppointed employee" who is "unclassified, [is] terminable-at-will unless subject to an employment contract[.]" (*Id.* at 5.) Yet, the Court ultimately concludes that these provisions do not negate the property interest Plaintiff's Contract allegedly created, at least at this stage of the litigation. Rather, the Court finds that, construed in Plaintiff's favor, the Ordinance expressly permits the Contract's definite-tenure and just-cause-termination provisions to override the Ordinance's provisions otherwise designating her position as appointed and terminable-at-will.

Second, the Contract indicated that Plaintiff would serve as the City's "Chief Administrative Officer" and referred to Sections 3-14-13 to 3-14-15 to help define her duties. (Doc. 1-2 at 10.) Thus, the Court must consider Section 3-14-13, which provides that a "manager," who serves as a municipality's "chief administrative officer," "shall be *appointed* solely on the basis of administrative qualifications" and "shall be employed for an indefinite term." N.M. Stat. Ann. § 3-14-13 (emphasis added). Yet again, at this stage of the litigation, the Court ultimately concludes that Section 3-14-13 does not necessarily negate the property interest Plaintiff's Contract allegedly created, because Plaintiff has plausibly alleged that the City hired her for a position distinct from the position described in Section 3-14-13. As Plaintiff observes, if the City had wanted to hire her as a municipal "manager" governed by all of Section 3-14-13's terms, it could "have said so in clear and unmistakable terms," but it did not. (*Id*. at 4 (citing *New Mexico v. Bryant*, 655 P.2d 161 (N.M. Ct. App. 1982).) And there is a stark disconnect between the

Doc. 15-1 at 2.) Thus, the Court looks to Ordinance No. 444 to assess whether Plaintiff has plausibly alleged that she had a constitutionally protected property interest in continued employment with the City.

express, written definite-tenure and just-cause-termination provisions in Plaintiff's Contract and Section 3-14-13's provisions regarding a municipal manager's employment status.

Perhaps for these reasons, Defendants largely gloss over the threshold issue of whether Plaintiff had a constitutionally protected property interest in her continued employment with the City. (*See generally* Docs. 15, 21.) In particular, they fail to address, to any meaningful degree, whether the Ordinance and/or Section 3-14-13 affected the *existence* of Plaintiff's alleged constitutionally protected property interest, as opposed to its *contours*.[8] (*See generally id.*) Rather, at most, they observe that "the New Mexico Legislature and the City of Santa Rosa City Council may elect not to confer a property interest in public employment" and contend, in conclusory fashion, that Plaintiff "fail[s] to allege any facts that support her claim to a property interest."[9] (Doc. 15 at 9–11 (quotation marks and brackets omitted).) And they elsewhere undermine their

---

[8] In *Webb v. Village of Ruidoso Downs*, 871 P.2d 17 (N.M. App. 1994), the New Mexico Court of Appeals construed N.M. Stat. Ann. § 3-12-4—which expressly designates certain municipal offices as "appointive"—as a legislative determination that the office of municipal clerk is an appointed one, and therefore held that a municipal clerk did not have an employment contract arising out of a merit system ordinance enacted under N.M. Stat. Ann. § 3-13-4, which applies only to "municipal employees." 871 P.2d at 18-21. Similarly, in *Maez v. Coppler & Aragon, P.C.*, 173 F.3d 864 (10th Cir. 1999) (unpublished), the Tenth Circuit held that a village marshal was an appointed official under Section 3-12-4 and therefore had no property interest in continued employment arising out of a personnel merit ordinance. *Id.* at *1-*2. Likewise, in *Armijo v. Village of Columbus*, the court concluded that a chief of police appointed pursuant to Section 3-12-4 lacked a property interest in his employment arising out of a merit system ordinance. No. 08-cv-935, 2011 WL 13261994, at *2-*3, *6 (D.N.M. Mar. 30, 2011). However, none of these cases involved a written employment contract with definite-tenure and just-cause-termination provisions, and none of them concerned the municipal manager position described in Section 3-14-13, much less a "City Administrator" position. Somewhat more factually analogous is *Maes v. City of Las Vegas*, in which the court found that a city charter providing that the city manager "shall [b]e employed for an indefinite term" rendered a city manager's written contract with definite-tenure and just-cause-termination provisions "ultra vires and void." No. 02-cv-196, 2003 WL 27385388 at *5 (D.N.M. Feb. 20, 2003). However, the *Maes* court also found that the written contract (1) was invalid because it had not been approved by the city council in accordance with the New Mexico Open Meetings Act, and (2) had expired before the plaintiff was terminated. *Id.* at *6. Neither of those circumstances appears to be at issue here. Moreover, neither side has discussed any of the foregoing cases in its briefing. (*See generally* Docs. 15, 19, 21.) As such, the Court refrains from opining on these cases' potential impact on Plaintiff's claims in this Memorandum Opinion and Order.

[9] Defendants do argue at some length that Plaintiff has not sufficiently alleged a property interest protected by *substantive* due process. (Doc. 19 at 15-18.) However, as Defendants' arguments make clear, this analysis is distinct from the analysis of whether Plaintiff has sufficiently alleged a property interest protected by *procedural* due process, which is the relevant question here. (*See id.*)

own perfunctory argument by repeatedly stating that Plaintiff had only a "limited" or "very limited" property interest in her continued employment as City Administrator, essentially conceding that *some* property interest existed. (*Id.* at 2, 9, 10.) The Court is left to conclude that Plaintiff has plausibly alleged a protected property interest in her continued employment as City Administrator, not only for the reasons discussed above, but also because Defendants have failed to present any substantive legal arguments to the contrary. Thus, the Court proceeds to the second prong of the procedural due process analysis.

> ### ii.   *Plaintiff has plausibly alleged that she did not receive constitutionally adequate process.*

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Loudermill*, 470 U.S. at 541. In their Motion, Defendants contend that "the contours of Plaintiff's property interest, as defined by state law through the Contract and Ordinance, did not require any more process than guaranteed in the Contract and Ordinance; and any process guaranteed therein was adhered to by the City under the facts pled in" Plaintiff's Amended Complaint. (Doc. 15 at 11.) According to Defendants, "[t]he Ordinance plainly explains that appointed, unclassified employees like [the] City Administrator are not entitled to pre or post termination hearings and are subject to dismissal with or without progressive discipline, and … have no right to [the] grievance procedure." (*Id.* at 10.) Thus, they maintain that Plaintiff had no right to any of these kinds of process. (*See id.* at 10-11.)

But, in so arguing, Defendants fail to acknowledge the distinct nature of the two prongs of the procedural due process analysis. As discussed in Section III.A.i., *supra*, to determine the first prong, *i.e.*, whether the plaintiff possesses a protected property interest, courts do consult independent sources such as state or local law. *Carnes*, 922 F.2d at 1509. But to determine the second prong, *i.e.*, what process is due, courts consult the Constitution. *Loudermill*, 470 U.S. at

540-41. "While the legislature may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Id.* (brackets omitted) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974) (Powell, J., concurring)). And "minimum procedural requirements are a matter of federal law[;] they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action."[10] *Id.* at 541 (brackets omitted).

The *Loudermill* Court held that, pursuant to the Due Process Clause, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546 (citing *Arnett*, 416 U.S. at 170–71). Distilling these requirements, the Court explained that there must be notice and "some kind of a hearing" before an employee with a constitutionally-protected property interest is discharged. *Id.* at 542, 546. These pre-termination due process requirements "need not be elaborate," and "something less than a full evidentiary hearing is sufficient." *Id.* at 545 (quotation marks omitted). As the *Loudermill* Court explained, a

> pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

*Id.* at 545–46 (citation omitted). Accordingly, here, the Court considers whether Plaintiff has plausibly alleged that Defendants failed to provide her with constitutionally sufficient process—

---

[10] In *Arnett*, 416 U.S. at 152-54, three Supreme Court justices voted for the proposition, consistent with Defendants' present position, that "[w]here the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant … must take the bitter with the sweet." *Loudermill*, 470 U.S. at 540. However, the *Loudermill* Court definitively rejected this minority view. *Id.* at 540-41.

*i.e.*, notice and an opportunity to be heard—to determine whether there were reasonable grounds to support her termination. *See id.*

In her Amended Complaint, Plaintiff alleges that: (1) no one informed her of the reason she was suspended on May 12, 2021, (Doc. 1-2 at 2); (2) when City agents demanded her resignation on May 14, 2021, they refused to tell her the basis for their demands, (*id*. at 2-3); (3) she was never given an opportunity to respond to the Mayor or the City Council regarding the reasons for her termination before she was fired, (*id.* at 3); (4) she was not given access to the City investigator's report before her termination and was not given an opportunity to respond to the allegations contained therein to the Mayor or the City Council, (*id*. at 3-4); and, (4) she was not permitted to attend the June 11, 2021 executive session at which the City Council voted to terminate her employment. (*Id*. at 4.) Plaintiff elaborates that when the City demanded her resignation, she was only aware that the demand was based on some "incident [that] allegedly occurred," but she was not privy to any "meaningful particulars" from which she "could intelligently respond to [the] undisclosed allegations," such as the name of the City employee involved. (*Id*. at 3.)

Defendants maintain that the City investigator's interview of Plaintiff gave her notice of the allegations against her and qualified as a pre-termination hearing that comports with the requirements of *Loudermill*. (Doc. 15 at 12–13.) That is, they suggest that the interview effectively provided "a verbal pre termination warning and an opportunity to discuss any allegations prior to the termination." (*Id*. at 12 (citing *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009)).) Defendants submit that it was of no consequence whether the investigator's findings were ultimately "correct," because Plaintiff's *participation* in the investigation served as an "initial

check" that gave the City Council "reasonable grounds to believe the charges against" her were true. (*Id.* at 12-13 (quoting *West v. Grand Cnty.*, 967 F.2d 362, 367 (10th Cir. 1992).)

The problem for Defendants is that, accepting Plaintiff's well-pled factual allegations as true and viewing them in the light most favorable to her, it is not plausible to conclude that the City investigator's interview gave Plaintiff constitutionally adequate notice of the allegations against her and an opportunity to be heard. Although Plaintiff does allege that she answered the investigator's questions, she does *not* allege that the investigator told her anything at all about the reasons for her suspension and subsequent termination, either directly or indirectly by virtue of the questions the investigator asked. (*See generally* Doc. 1-2.) And drawing this adverse inference on a motion to dismiss would be improper. *See Nakkhumpun*, 782 F.3d at 1146. Moreover, Plaintiff could not meaningfully respond to the accusations against her if she did not have notice of them, notwithstanding the allegation that she was allowed, and indeed required, to answer the investigator's questions. In short, the mere fact that Plaintiff answered whatever questions the City's investigator chose to ask does not rise to the level of constitutionally adequate notice and an opportunity to be heard. For all of these reasons, the Court finds Plaintiff has plausibly alleged that the City failed to provide her with constitutionally adequate notice and an opportunity to be heard before terminating her employment. The Court will deny Defendants' Motion in this regard.[11]

---

[11] Elsewhere in their briefing, Defendants argue that Plaintiff "fails to plead a Section 1983 claim for an unconstitutional policy or practice against the City under the [Rule] 12(b)(6) standard." (Doc. 15 at 13.) They contend that "Plaintiff has not pled particularized facts showing that the City's Merit System Ordinance and the procedures it affords to City Administrators are unconstitutional," but they do not further develop this argument. (*Id.* at 14.) Initially, the Court notes that "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The [C]ourt will not do his research for him." *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (brackets omitted). Further, Defendants' argument appears to lack merit given Plaintiff's allegations regarding the entire City Council's direct involvement in the allegedly wrongful acts and omissions at issue. *See, e.g.*, *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) ("[I]f an official, who possesses final policymaking authority in a certain area,

### *iii. Plaintiff has plausibly alleged that Defendant Campos violated her clearly established procedural due process rights.*

Defendants next assert that Plaintiff has failed to plead facts showing that Defendant Campos' individual acts violated her clearly established right to the process discussed in *Loudermill*. (Doc. 15 at 20.) They insist, first, that Plaintiff has not pled "facts showing that [Defendant] Campos' individual acts, as opposed to his acts combined with those of other Councilors, constituted [a] violation of 'clearly established' procedural … due process rights." (*Id.* at 18.) Plaintiff, however, alleges that Defendant Campos decided she should be terminated "prior to receiving the investigator's report and prior to the City Council's meeting of June 11, 2021." (Doc. 1-2 at 5.) Further, construed in her favor, Plaintiff's allegations that Defendant Campos spoke to his fellow councilors at the June 11, 2021, executive session but neither he nor the other councilors admit to any memory of what he said, plausibly support the inference that he persuaded a majority of them to vote to terminate her even though she had not, allegedly, been given constitutionally adequate pre-termination process. (*See id.*) The Court therefore finds that Plaintiff plausibly alleges a nexus between Defendant Campos' alleged individual acts and omissions and the City's decision to terminate her without pre-termination notice and an opportunity to be heard.

Of course, Plaintiff's procedural due process claim against Defendant Campos in his individual capacity also implicates qualified immunity, as "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).

---

makes a decision—even if it is specific to a particular situation—that decision constitutes municipal policy for § 1983 purposes.").

When a defendant raises the qualified immunity defense on a motion to dismiss, as Defendant Campos has here, the plaintiff bears the burden of pleading facts to show that: (1) the defendant violated a federal constitutional or statutory right; and, (2) the right was clearly established at the time of the challenged conduct. *See al-Kidd*, 563 U.S. at 735. "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. No*e, 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011)).

Defendants insist that "there is no case holding that the exact conduct alleged in the [Amended Complaint] against [Defendant Campos] violates a clearly established property right under the circumstances particular to [Plaintiff], her Contract, and Ordinance [No.] 444." (Doc. 15 at 21.) But Plaintiff points to *Perry v. Sindermann* as Supreme Court authority clearly establishing her procedural due process rights. (*See* Doc. 19 at 8.) Despite factual and legal differences between *Perry* and the present matter,[12] the Court is satisfied that at the time Plaintiff was terminated, a public employee with a written employment contract containing definite-tenure and just-cause-termination provisions had a clearly established property interest in continued employment, *see Perry*, 408 U.S. at 601; *Gonzales*, 701 F.3d at 1271; *Roth*, 408 U.S. at 576–77, and to notice and "some kind of a hearing" before being fired, *Loudermill*, 470 U.S. at 542, 546, under clearly established Supreme Court and Tenth Circuit law. Thus, assuming the truth of the allegations in Plaintiff's Amended Complaint – including her plausible allegation that she was hired into a

---

[12] *Perry* involved a state junior college professor whose implied tenure contract was not renewed following his public criticism of the college's policies and administration. 408 U.S. at 594–95. Comparing *Perry* to the case at hand, the Court acknowledges that there are differences in the official conduct at issue, the type of employment contract and its terms, and the governing law. *See generally id.* Still, *Perry* is often cited for the bedrock proposition applicable here, *i.e.*, that a written employment contract with a definite-tenure provision creates a property interest protected by the procedural component of the Due Process Clause. *See, e.g.*, *Carnes*, 922 F.2d at 1509.

position distinct from the "manager" position described in N.M. Stat. Ann. § 3-14-13—the Court concludes that Defendant Campos is not entitled to qualified immunity from Plaintiff's *Loudermill* claims at this stage of the litigation.

> **iv.    Plaintiff has plausibly alleged that Defendants violated her due process right to a fair and impartial tribunal.**

In addition to claiming that she did not receive notice and an opportunity to be heard before her termination, Plaintiff claims that she was denied procedural due process because the decisionmakers who fired her were neither fair nor impartial. (Doc. 1-2 at 7.) The Tenth Circuit has held that an impartial tribunal is another essential element of procedural due process. *See Langley v. Adams Cnty., Colo.*, 987 F.2d 1473, 1480 (10th Cir. 1993); *Riggins*, 572 F.3d at 1112. "[A] person claiming bias on the part of an administrative tribunal 'must overcome a presumption of honesty and integrity in those serving as adjudicators.'" *Riggins*, 572 F.3d at 1112 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). "Due process is violated only when 'the risk of unfairness is intolerably high' … [, and] there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Hicks v. City of Watonga*, 942 F.2d 737, 746–47 (10th Cir. 1991) (citation omitted).

In her Amended Complaint, Plaintiff alleges that City agents demanded her resignation before investigating undisclosed allegations against her and that Defendant Campos decided she should be fired after meeting with several City employees but before he received the City investigator's report and before the June 11, 2021 executive session at which her employment was discussed. (Doc. 1-2 at 2-3, 5.) And as noted above, Plaintiff further alleges that Defendant Campos spoke at the executive session but neither he nor any of his fellow councilors admit to any memory of what he said and that Defendant Campos "is believed to have infected the decision[-]making

process." (*Id*.) As explained below, the Court finds Plaintiff has plausibly alleged that Defendants denied her the impartial tribunal that due process requires.

### a.  Plaintiff's Impartial Tribunal Claim Against the City

Defendants argue that "[a]ny allegation that [Plaintiff] was denied a fair and impartial tribunal is purely conclusory and need not be considered." (Doc. 15 at 13–14 (citing *Iqbal*, 556 U.S. at 679–80).) Defendants further contend that by alleging no Council member recalls what was discussed in the executive session, Plaintiff essentially "asks the Court to 'infer the mere possibility' of misconduct, without pleading any particularized facts indicating that [Defendant] Campos' alleged predisposition existed or was shared with or otherwise impacted the votes of the other three Councilors." (*Id*. at 14–15.) Ultimately, Defendants insist that Plaintiff fails to plead facts showing that the City Council, in voting to terminate her, collectively engaged in an unconstitutional policy or practice. (*Id*. at 14.)

 In response, Plaintiff contends that the "convenient memory loss" of the entire City Council about what was said during the executive session at issue "gives rise to the reasonable inference that there was indeed" improper influence by Defendant Campos at the meeting. (Doc. 19 at 10-11.) Plaintiff goes on to argue that "[i]t is very reasonable, if not likely, that [Defendant] Campos shared [the] conversation he had with the employees who threatened to quit if Plaintiff were not fired with the other councilors in executive session." (*Id*. at 11.) And the Court agrees that the inference that Defendant Campos told his fellow council members about this conversation and his predetermination to fire Plaintiff is at least wholly plausible under the circumstances alleged.

Admittedly, Plaintiff does *not* allege facts tending to show that council members other than Defendant Campos had already decided to fire her before the executive session or were biased

independently of what Defendant Campos told them at the meeting.[13] (*See generally id.*) And given that Defendant Campos was only one member of the tribunal that collectively decided to terminate Plaintiff's employment, this begs the question whether Plaintiff can state a claim based upon his alleged bias, which then "infected the decision[-]making process" of the other councilors. (*Id.* at 5.) Defendants contend that because it "takes a majority of the City Council to terminate a City Administrator," Plaintiff fails to "plead particularized facts [or] offer any law indicating how the other three Councilors made an unconstitutional policy decision in voting to terminate her." (Doc. 15 at 15.) However, Tenth Circuit law undermines Defendants' position.

In *Hicks*, the Tenth Circuit considered on interlocutory appeal a police officer's Section 1983 claims against various city employees on the basis that they, among other things, violated his procedural due process rights by failing to provide an unbiased tribunal. 942 F.2d at 746. On summary judgment, the plaintiff police officer presented evidence of bias as to only two of eight council members who made up the tribunal that considered his termination appeal. *Id.* at 747. The Tenth Circuit acknowledged that he "present[ed] no evidence that the majority of the tribunal members" were biased. *Id.* at 747–48 (citing *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 492 (1976)). Nevertheless, the court reasoned:

> Though only one member arguably should have been disqualified from the tribunal which ultimately deprived [the plaintiff] of his job, [the plaintiff] may still have a valid due process claim. "Litigants are entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured." Thus, if [one tribunal member] is found to have been biased when she cast her vote on [the plaintiff's] dismissal, her presence will have tainted the tribunal and violated [the plaintiff's] due process rights.

---

[13] Plaintiff does allege that "the decision to terminate Plaintiff was already predetermined and finalized" by the time City agents demanded her resignation, confiscated her City property, ordered her out of the building in which her office was located, barred her from communicating with City employees, and banned her from City offices. (Doc. 1-2 at 3.) But she does not identify the actors who had allegedly already made the decision to fire her at this juncture. (*See generally id.*)

*Id*. at 748–49 (quoting *Cinderella Career & Finishing Schs., Inc. v. F.T.C.*, 425 F.2d 583, 592 (D.C. Cir. 1970) (citations omitted).

Likewise, in *Cinderella Career & Finishing Schools, Inc.*, relied on in *Hicks*, the District of Columbia Circuit Court of Appeals determined that the Federal Trade Commission ("FTC") violated due process when its chairman's statements gave the "appearance that he ha[d] already prejudged the case and that the ultimate determination of the merits [would] move in predestined grooves." 425 F.2d at 590. Reasoning that "[l]itigants are entitled to an impartial tribunal," the court remanded and reversed the FTC's decision on due process grounds "despite the fact that [the] former Chairman['s] vote *was not necessary for a majority*." *Id*. at 592 (emphasis added). It follows from this authority that if Plaintiff has plausibly alleged bias on the part of Defendant Campos, which the Court is satisfied she has, then she may state a procedural due process claim based on the lack of an impartial tribunal even without directly alleging that all of the City Council's members, or even a majority of them, were biased.[14] The Court will therefore deny Defendants' Motion as to Plaintiff's impartial tribunal claim against the City.

### b.  Plaintiff's Impartial Tribunal Claim against Defendant Campos

Plaintiff also asserts an individual capacity claim against Defendant Campos based upon his alleged bias. (*See* Doc. 1-2 at 7 ("[Defendant Campos] was biased and partial at the time he voted on terminating Plaintiff and is believed to have contaminated Plaintiff's constitutional right to a fair and impartial tribunal.").) Again, claims against Defendant Campos in his individual capacity implicate qualified immunity, and to defeat this defense on a motion to dismiss Plaintiff

---

[14] In *Hicks*, the Tenth Circuit acknowledged the narrowness of its holding related to the plaintiff's procedural due process claim, conceding that the holding "sa[id] nothing about causation or damages." 942 F.2d at 751. Here, too, the Court's conclusion that Plaintiff's impartial tribunal claim against the City survives Defendants' Motion does not specifically address the elements of causation or damages. Defendants did not develop arguments related to these elements of Plaintiff's procedural due process claim, and the Court will not do so on their behalf. *Phillips*, 244 F.3d at 800 n.10.

must plausibly allege facts showing that he violated her constitutional right to a fair and impartial tribunal, and that this right was clearly established at the time of the alleged violation. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

Jumping to the second prong of the qualified immunity analysis, Defendants contend that Plaintiff fails to plead facts demonstrating that Defendant Campos violated her clearly established procedural due process rights. (Doc. 15 at 18-21.) In her Amended Complaint, Plaintiff alleges that Defendant Campos developed a bias against her during conversations he had with other City employees before receiving the City investigator's report and before the executive session at which the City Council voted to fire her, and "made his decision to terminate" her employment at that time. (*See* Doc. 1-2 at 5, 7.) Plaintiff further alleges that Defendant Campos' bias "contaminated" her right to a fair and impartial tribunal. (*See id*. at 7.)

As to Defendant Campos' alleged discussions with City employees, the Court finds that it would not have been sufficiently clear to a reasonable official in his position that merely engaging in such *ex parte* discussions would violate clearly established law. *See, e.g., Riggins*, 572 F.3d at 1112–14 (explaining that procedural due process does not require reviewing personnel to be "completely divorced from or blinded to the underlying nature of the reasons for dismissal"). Nor would it have been sufficiently clear to such an official that he would violate clearly established law by simply taking an initial position regarding Plaintiff's retention or termination as City Administrator, so long as his mind was not irrevocably closed on the matter. *See id.* (rejecting the plaintiff's argument that his due process rights were violated because the same individuals made an *initial* decision to terminate him and then presided over hearings at which he contested that decision). "The fact 'that [a tribunal] entertained … views as the result of its prior ex parte

investigations [does] not necessarily mean that the minds of its members were irrevocably closed on the subject." *Id*. at 1112 (quoting *Withrow*, 421 U.S. at 48, 56–58).

But Defendant Campos' alleged *predetermination* to terminate Plaintiff is another matter. In *Riggins*, the Tenth Circuit offered two examples of bias in a termination proceeding that violated the procedural due process clause. *See Riggins*, 572 F.3d at 1113. First, it noted that bias was established in *McClure v. Independent School District Number 16*, 228 F.3d 1205 (10th Cir. 2000), when decisionmakers "publicly stated their intent to terminate McClure's employment prior to the hearing at which the matter of her termination was to be decided." *Riggins*, 572 F.3d at 1113 (brackets omitted) (quoting *McClure*, 228 F.3d at 1215–16). Second, it observed that bias was shown in *Staton v. Mayes*, 552 F.2d 908 (10th Cir. 1977), a case relied upon by Plaintiff, when members of a school board made statements prior to a termination hearing to the effect that the superintendent should be fired. *Riggins*, 572 F.3d at 1113 (citing *Staton*, 552 F.2d at 914). The *Riggins* court recounted its rationale in *Staton*: that statements on the merits by the decisionmakers charged with fact-finding related to the employee's termination "left no room for a determination that there was a decision by a fair tribunal, with the appearance of fairness." *Id*. at 1113 (quoting *Staton*, 552 F.2d at 914–15).

Here, Plaintiff goes further than alleging that Defendant Campos made statements on the merits prior to the executive session at which the City Council voted to fire her. Most particularly, she alleges that he "had already made his decision." (Doc. 1-2 at 5.) And an inference plausibly arising from this allegation is that, when Defendant Campos participated in the executive session, he did not fairly decide the controversy based on what was in the investigator's report and discussed in the executive session, but instead voted in accordance with his predetermination.[15]

---

[15] Moreover, Defendant Campos' alleged inability to recall what he said at the executive session reinforces the inference that he engaged in conduct exposing him to the risk of legal liability. (Doc. 1-2 at 5.)

*Cf. Hortonville Joint Sch. Dist. No.*, 426 U.S. at 493 (reasoning that a decisionmaker is not biased simply because he has taken a previous position on a related issue *so long as* there is no "showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances'") (quoting *United States v. Morgan*, 313 U.S. 409, 421 (1941)). When a member of a tribunal has irrevocably pre-judged an issue the tribunal is to hear, that action amounts to a denial of a fair and impartial tribunal. *See Cinderella Career & Finishing Schs., Inc.*, 425 F.2d at 584–85, 591–92. Moreover, the Court is satisfied that it would have been sufficiently clear to a reasonable official that such a predetermination would violate a public employee's clearly established procedural due process rights, where the employee had a property interest in her continued employment. *See, e.g., id.*; *Hicks*, 942 F.2d at 747–49; *Staton*, 552 F.2d at 913–15. The Court will therefore deny Defendants' Motion as to Plaintiff's impartial tribunal claim against Defendant Campos.

### B.  Plaintiff's Breach of Contract Claims against the City

In their Motion, Defendants also argue that Plaintiff fails to state a claim for breach of contract. (Doc. 15 at 21, 24.) Under New Mexico law, the elements of a breach of contract claim include:

> (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and [her] performance of the obligations under it; (3) a general averment of the performance of any conditions precedent; and (4) damages suffered as a result of defendant's breach.

*McCasland v. Prather*, 585 P.2d 336, 338 (N.M. Ct. App. 1978) (citing Wright & Miller, Fed. Practice and Procedure: Civil § 1235 (1969)). In her Amended Complaint, Plaintiff alleges that the City breached the Contract by:  (1) "failing to provide notice in accordance with the terms and conditions of the [C]ontract"; (2) "breaching the covenant of good faith and fair dealing"; (3) "not

affording Plaintiff an opportunity to cure any perceived issues prior to termination as allowed under the Ordinance"; and, (4) "not having 'good cause' to terminate her." (Doc. 1-2 at 6.)

Defendants advance three arguments in support of their request for dismissal of Plaintiff's breach of contract claims. First, they suggest that the Amended Complaint does not include sufficient factual allegations to support Plaintiff's claim that the City lacked "just cause" to fire her and instead requires the Court to make "numerous unsupported inferences" on that point. (Doc. 15 at 22–23.) Second, Defendants submit that Plaintiff has failed to allege causation with respect to her contractual claims. (*Id*. at 23–24.) Finally, Defendants suggest that Plaintiff's claim that the City breached the Contract by failing to afford her an opportunity to cure fails as a matter of law, given the terms of the Contract and the provisions of the Ordinance. (Doc. 15 at 23; Doc. 21 at 10.)

As to Defendants' first argument, although the Amended Complaint is somewhat short on details regarding the City's alleged lack of "just cause" for her termination, the Court is satisfied that Plaintiff's allegations are sufficient to "nudge[]" her breach of contract claims on this basis "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Initially, Plaintiff specifically alleges that Defendant Campos decided to vote to fire her based on other employees' threats that they would resign if she was not fired, and that he did so before receiving the City investigator's report and before the executive session at which the Council discussed her employment. (Doc. 1-2 at 5.) Further, as discussed in Section III.iv.a., above, the allegations in the Amended Complaint, viewed in Plaintiff's favor, support the inference that Defendant Campos then influenced the other City Councilors' decisions to vote to terminate her. And, viewed in Plaintiff's favor, the governing Ordinance appears to define "just cause" for termination in terms of the "conduct, action, or inaction" of the employee to be terminated, rather than the threatened

conduct, action, or inaction of other employees. (*See* Doc. 15-1 at 3-4.) Plaintiff has thus sufficiently alleged that the City terminated her employment, not for just cause based on her own acts and omissions, but rather based on the independent acts and omissions of other employees.

Buttressing these allegations, Plaintiff also alleges that the City had already decided to terminate her employment when its agents demanded that she resign but refused to give her any reason for the demand. (*See* Doc. 1-2 at 2-3.) Moreover, according to Plaintiff, only after this incident did the City hire an investigator "to retroactively justify its previously made decision." (*Id*.) These alleged circumstances further support the inference that the City lacked "just cause" to terminate her employment when it made the decision to do so. Detailed factual allegations are not required, *see Iqbal*, 556 U.S. at 678, and in the Court's view, Plaintiff has asserted sufficiently particularized factual allegations to give Defendants fair notice of her claims and the grounds on which they rest. *See Erickson*, 551 U.S. at 93. The Court therefore rejects Defendants' request for dismissal of Plaintiff's breach of contract claims based on the City's alleged lack of "just cause" to terminate her employment.

Relatedly, Defendants argue that Plaintiff has failed to allege causation because "the facts alleged in the [Amended Complaint] show that the cause of the [C]ontract termination was the City Council's belief that they had 'just cause' within the meaning of the Contract and Ordinance to terminate" Plaintiff. (Doc. 15 at 23.) But the Court is not persuaded. Viewed in Plaintiff's favor, neither the facts alleged in the Amended Complaint, nor the Contract, nor the Ordinance entitled the City to terminate Plaintiff's employment based on its agents' erroneous belief that it had "just cause" to do so. And her well-pled allegations that the City in fact fired her without just cause easily support the inference that this wrongful act caused her damages. (*See* Doc. 1-2 at 6 (alleging

that "[a]s a result of the City's acts and omissions in breaching the [C]ontract, Plaintiff sustained

the following damages ….".) The Court likewise denies Defendants' Motion on this ground.

Finally, as to Plaintiff's claim that the City breached the Contract by "not affording [her]

an opportunity to cure any perceived issues prior to termination," Defendants contend that, even

taken as true, Plaintiff's allegations in support of this claim fail to demonstrate a breach of contract.

(Doc. 15 at 23.) In support, Defendants note that the Contract required *Plaintiff* to give *the City* an

opportunity to cure material breaches before terminating the Contract, but not vice versa. (*Id*.

(citing Doc. 1-2 at 11).) Further, Defendants contend that the Ordinance contemplated an

opportunity for Plaintiff to cure only if her "unsatisfactory performance" led to her termination.

(*Id*.; *see* Doc. 15-1 at 3–4 ("[J]ust cause includes, but is not limited to: … unsatisfactory

performance which continues to be inadequate after reasonable efforts have been made to correct

the performance problems[.]")) Defendants insist that, because Plaintiff does not allege the City

fired her due to performance-related issues, she fails to state a claim for breach of contract based

on their alleged failure to give her an opportunity to cure such issues. (Doc. 15 at 23.) Plaintiff

does not respond to Defendants' arguments regarding this claim.[16] (*See* Doc. 19 at 15-16.)

The Court agrees that Plaintiff has failed to plead sufficient facts to support her claim that

the City breached the Contract by denying her an opportunity to cure. In particular, Plaintiff has

not alleged any facts to support the inference that the City purported to fire her for "unsatisfactory

performance" without first making "reasonable efforts … to correct the performance problems,"

as required by the Contract. (Doc. 15-1 at 4; *see generally* Doc. 1-2.) Nor has Plaintiff alleged any

---

[16] Although Plaintiff does not address Defendants' position that the express terms of the Contract did not entitle her to an opportunity to cure, she *does* submit that "[n]ot providing [her] an opportunity [to] cure any perceived issues" violated the implied covenant of good faith and fair dealing. (Doc. 19 at 15 (citing *Bourgeous v. Horizon Healthcare Corp*., 872 P.2d 852 (N.M. 1994)). Defendants have not asserted grounds for dismissing Plaintiff's breach of the covenant of good faith and fair dealing claim. (*See* Docs. 15, 21.) This claim, therefore, survives Defendants' Motion.

facts tending to show that the Contract required the City to give her an opportunity to cure before

firing her for some other reason. The Court will therefore grant Defendants' Motion as to this

narrow claim, though without prejudice to Plaintiff's ability to seek leave to amend it, as the Court

cannot say with certainty that granting such leave would be futile. *Cf. Rosenfield v. HSBC Bank,*

*USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) ("[D]ismissal with prejudice is appropriate where the

complaint fails to state a claim and granting leave to amend would be futile.") (brackets, ellipses,

and quotation marks omitted). As to Plaintiff's remaining breach of contract claims, the Court will

deny Defendants' Motion.[17]

## IV.   CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss and for Qualified Immunity

(Doc. 15) is GRANTED IN PART and DENIED IN PART.

(1) The Motion is GRANTED insofar as Plaintiff's breach of contract claim based on the

City's alleged failure to give her an opportunity to cure her performance is dismissed

with leave to amend. Pursuant to Federal Rule of Civil Procedure 15(a)(2) and ***no later***

***than October 23, 2023***, Plaintiff may file either (a) a second amended complaint with

Defendants' written consent; or, (b) a properly supported opposed motion for leave to

file a second amended complaint. The modifications to the filed or proposed second

---

[17] As she points out in her response, Plaintiff has also asserted a breach of contract claim on the basis that the City failed to provide her with adequate notice of termination of the Contract. (Doc. 1-2 at 6; Doc. 19 at 16.) Although Defendants address Plaintiff's notice claim in their reply, (*see* Doc. 21 at 10–11), they did not move for dismissal of Plaintiff's breach of contract claims on this ground in their Motion. (*See* Doc. 15 at 21–24.) Further, Defendants' arguments in their reply rely on City Council Meeting Minutes from June 10, 2021, which they attach as an exhibit to the reply. (Doc. 21, Ex. B.) But Plaintiff filed a notice of objection to the use of these minutes based on lack of foundation, lack of authenticity, hearsay, lack of relevancy, violation of the best evidence rule, and an assertion that the document is misleading. (Doc. 23.) The Court declines to consider Defendants' arguments presented for the first time in their reply, particularly where these arguments would require the Court to convert their motion to dismiss into one for summary judgment. Fed. R. Civ. P. 12(d); *see Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003) (courts generally do not consider new arguments or evidence presented for the first time in a reply and must either permit a surreply or refrain from relying on the new material).

amended complaint must be limited to those necessary to cure the dismissed claim's defects.

(2) In all other respects, Defendants' Motion is DENIED.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE